Deborah M. Nelson, Esq. (State Bar No. 23087)
nelson@nelsonboydlaw.com
Jeffrey D. Boyd, Esq. (State Bar No. 41620)
boyd@nelsonboydlaw.com
NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
Telephone:  (206) 971-7601

*Attorneys for Plaintiffs*

IN THE UNITED STATES COURT
DISTRICT OF WASHINGTON (TACOMA)

| | |
|---|---|
| CHERYL ROSS, WILFRED SOMERS, VIVIAN SOMERS, and all others similarly situated, | CIVIL ACTION NO.:  3:10-CV-05829-RBL |
| PLAINTIFF, | **FIRST AMENDED** CLASS ACTION COMPLAINT |
| vs. | |
| BANK OF AMERICA CORPORATION, | DEMAND  FOR JURY TRIAL |
| and | |
| FIA CARD SERVICES, N.A., | |
| DEFENDANTS. | |

## **FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs CHERYL ROSS, WILFRED SOMERS, and VIVIAN SOMERS, individually

and on behalf of all others similarly situated (the "Class"), bring this class action against

Defendant BANK OF AMERICA CORPORATION (referred to as "Bank of America" or the

Amended Complaint - Page 1

1    "Company"), and FIA CARD SERVICES, N.A. (referred to as "FIA" or the "Company")

2    (collectively, "Defendants")  Plaintiffs seek certification of this matter as a class action.

3    Plaintiffs, by and through their attorneys, submit this Class Action Complaint (the

4    "Complaint") against the defendants named herein and allege as follows:

5                                **NATURE OF THE ACTION**

6          1.       This proposed or putative class action stems from the illicit activities

7    undertaken by Defendants while marketing and selling products associated with their credit

8    cards known as "Cardholder Security Plan,"  "Credit Protection Plus," Payment Protection,"

9    "Payment Protection Plus" and other monikers that all offer similar coverage (hereinafter

10   collectively referred to as "Payment Protection").

11         2.       Although Defendants' Payment Protection is indistinguishable from a contract

12   of credit insurance, Payment Protection is not marketed or sold as insurance.  Defendants do

13   not register Payment Protection with the Washington State Office of the Insurance

14   Commissioner, thereby avoiding state regulation.

15         3.       Defendants violated the law not only through the sale of a product that should

16   be – but is not, due to their unlawful activities – subject to insurance regulations, but also by

17   the deceptive and misleading manner in which it offers the Payment Protection plan to

18   consumers, and the manner in which it administers claims for benefits by consumers.

19         4.       Defendants market Payment Protection through direct mail and telemarketing.

20   It represents Payment Protection as a service that suspends or cancels the required minimum

21   monthly payment due on the subscriber's credit card account and excuses the subscriber from

22   paying the monthly interest charge and the Payment Protection plan fee for a limited period

23   of time, preventing the account from becoming delinquent.  Defendants' marketing for this

Amended Complaint - Page 2

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

product claims that "You've got help to stay on track when life gets expensive" and "Life is unpredictable.  Be prepared with Payment Protection Plus."[1] Among other things, Defendants promise that Payment Protection ". . . delivers the following:  ■ Peace of Mind ■ World Class Benefits. . ."

5.      Despite their simple explanation for marketing purposes, Defendants' Payment Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for customers to determine what Payment Protection covers and whether it is a sound financial choice.

6.      Defendants made material misrepresentations and omissions in the marketing of Payment Protection.

7.      Upon information and belief, Defendants require customers to enroll for Payment Protection coverage before it provides subscribers with the terms and conditions of the plan.  It then allegedly offers a 30 day window within which a subscriber may affirmatively cancel the plan.  By not adequately disclosing the terms of Payment Protection coverage to consumers before they buy the product, Defendants are violating – among other things – Washington's Consumer Protection Act.  RCW 19.86.090.

8.      Upon information and belief, days or weeks after the sale of Payment Protection, Defendants may in some instances mail written material to the subscriber.  Given the confusing way the written materials present the terms and conditions of Payment Protection, it would be extremely difficult for a subscriber to decipher those provisions.

9.      However, Defendants have established their "customer service" support in

---

[1] https://www9.bankofamerica.com/insurance/protection/credit-protection/overview.go
last viewed on 11/12/10.

Amended Complaint - Page 3

1    such a way that subscribers cannot easily cancel the plan or receive answers to benefit

2    questions.  It has established their "claim filing" system such that subscribers cannot easily

3    file claims or receive benefits for filed claims.

4         10.    Defendants do not refund Payment Protection premiums even after it has

5    denied subscribers claims for Payment Protection benefits, nor does it address subscribers'

6    continued obligations to pay the monthly fee for Payment Protection after a claim has been

7    denied.

8         11.    Payment Protection is so confusing as to when coverage is triggered, so

9    restricted in terms of the benefits it provides to subscribers, and processing claims is made so

10   difficult by Defendants, that the product is essentially worthless.

11        12.    Defendants know that for those subscribers who choose to pay for Payment

12   Protection, few will ever receive benefits under the plan and even for those that do, the

13   amounts paid in "premiums" will usually exceed any benefits paid out.

14        13.    As a result of Payment Protection, Defendants have increased their profits by

15   many millions of dollars, all thanks to a product which that does not provide the benefits

16   promised to thousands of Washington residents who are nevertheless charged for the product

17   month in and month out.

18                            **JURISDICTION AND VENUE**

19        14.    This Court has jurisdiction over this matter pursuant to the Class Action

20   Fairness Act, 28 U.S.C. § 1332(d) in that:

21        (a)  This is a class action involving 100 or more class members,

22        (b) Plaintiff, a citizen of the State of Washington, is diverse in citizenship from
     Defendant BANK OF AMERICA CORPORATION which is incorporated in
23   Delaware and has principal places of business in North Carolina, and from FIA
     CARD SERVICES, N.A., which is incorporated in Delaware and has principal

Amended Complaint - Page 4

places of business in Delaware.

15.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 73 herein;

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a.     questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

    b.     a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    c.     the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

    d.     there are no unusual difficulties foreseen in the management of this class action.

16.     The Court has personal jurisdiction over Defendants, which both have at least minimum contacts with the state of Washington because it has conducted business there and has availed itself of Washington's markets through their promotion, sales, and marketing efforts.

17.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Amended Complaint - Page 5

18.     This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## PARTIES

19.     Plaintiff CHERYL ROSS ("Ross") resides in Port Angeles, Clallam County, Washington.  Since at least 2005, Ms. Ross has had one or more credit cards in her name from Bank of America bearing "Cardholder Security Plan,"  "Credit Protection Plus," or other Payment Protection features.

20.     Plaintiffs WILFRED SOMERS and VIVIAN SOMERS (hereinafter collectively "Somers") are husband and wife and reside in Port Angeles, Clallam County, Washington.  Since at least 2007, Mr. and Mrs. Somers have had one credit card in the name of one or both of them from Bank of America bearing "Credit Protection Plus," or other Payment Protection features.

21.     Defendant BANK OF AMERICA CORPORATION is a Delaware corporation that maintains corporate headquarters in Charlotte, North Carolina, and is the parent corporation of Defendant FIA CARD SERVICES, N.A..

22.     Defendant FIA CARD SERVICES, N.A., is a Delaware corporation that maintains corporate headquarters in Delaware, and is a wholly-owned subsidiary of Defendant BANK OF AMERICA CORPORATION.

## FACTUAL ALLEGATIONS

23.     Defendants are one of the three largest general purpose credit card issuers in the United States and in 2009 were third in the country in purchase volume for the general purchase credit cards.  For the first six months of 2009, Defendants had 16% of the market

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1   share by credit card issuer.  Upon information and belief, Payment Protection is a profit

2   center for Defendants.

3          24.     Defendants advertise their Payment Protection Plus (hereinafter "Payment

4   Protection") program as "an important safety net" to protect consumers' Defendants credit

5   card accounts "when times get tough, or when you go through a major life event."  Payment

6   Protection provides for some form of benefit upon the occurrence of "protected events,"

7   including involuntary unemployment, hospitalization, disability, family leave of absence, and

8   loss of life.  Payment Protection also provides payment for a limited period of time upon the

9   occurrence of a "life event," defined as marriage, childbirth, adoption, college, a home move,

10  and other life-changing events.  The paperwork that advertises Defendants Payment

11  Protection Plan  and contains some of the terms and conditions of the Plan uses "Bank of

12  America" on the letterhead, and is signed by "Harry G. Lomax, Senior Vice President" who,

13  upon information and belief, is a Senior Vice President of Defendant Bank of America

14  Corporation.

15         25.     Defendants represent that their Payment Protection safeguards cardholders'

16  accounts by allowing a forbearance on monthly minimum payment obligations upon the

17  occurrence of certain typical life events (illness, unemployment, etc.) or possibly total

18  forgiveness of certain debt amounts in the event of death, both subject to extensive

19  exemptions and exclusions set forth in the fine print of documents which consumers typically

20  receive, if at all, only after enrolling in the plan.  During the forbearance periods, Defendants

21  continue to assess Finance Charges, i.e. interest continues to accrue on the cardholders'

22  account balance (including interest accruing on the portion of the account balance resulting

23  from the imposition of the Payment Protection Plan fee).

Amended Complaint - Page 7

26.     Defendants make no effort to determine whether a cardholder is eligible for Payment Protection benefits at the time of sale although, upon information and belief, Defendants are in possession of information, such as date of birth and name of last employer, that would assist Defendants in knowing whether a particular cardholder is eligible for Payment Protection.

27.     The terms of Defendants' Payment Protection are complicated and difficult for a layperson to understand.  The restrictions, limitations, and exclusions associated with "protected events" and the proofs required to establish them are expansive and confusing.

28.     Defendants require customers to enroll for Payment Protection coverage *before* it provides subscribers with the terms and conditions of the plan.

29.     Days or weeks after the sale of Payment Protection, Defendants may in some instances mail written material to the subscriber.  Given the confusing way the written materials present the terms and conditions of Payment Protection, it is extremely difficult for a subscriber to decipher those provisions.  According to the written materials, which are only provided *after* subscribers have already been enrolled in the plan, there are numerous restrictions and qualifications on Payment Protection coverage, but because these restrictions are in small print and in incomplete, indecipherable, misleading, and obfuscatory language, they are not readily comprehensible to subscribers.  It is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

30.     After a subscriber is enrolled, the person may then affirmatively cancel the plan through what Defendants market as a "30 day review period."  and/or FIA shift their burden and duty of full disclosure prior to the sale to the customer and require subscribers to decipher

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

the terms of the product after it has already been purchased and take action to cancel it.  It characterizes this sales scheme as a review period during which consumers can cancel their enrollment within 30 days of the effective date and "all protection fees billed to your account will be refunded via a credit to the protected card."[2]  In fact, the obligation is affirmative: "You will be billed during the first 30 days; however, if you decide you do not want to keep the protection you have 30 days from the Effective Date to cancel and receive a full refund of the billed program fees."[3]

31.    Defendants do not ask prospective subscribers whether they have certain characteristics or meet certain factors that would bar them from being eligible for benefits under Payment Protection, even though Defendants have a common practice of limitations on full coverage based on exclusions.

a.    For instance, upon information and belief, Washington retired persons may be charged for Payment Protection even though they are categorically excluded from receiving some of the benefits under the plan.  Defendants do not ask customers whether they are retired.

b.    Similarly, upon information and belief, the benefits for unemployment are limited to those receiving unemployment insurance benefits (although not all unemployed people are eligible for benefits) or, for self-employed, under certain specific instances.  Defendants do not ask customers whether they are self-employed or so-called independent contractors.

c.    Further, part-time or seasonal workers are also limited or categorically

---

[2] *See* https://www7.bankofamerica.com/insurance/protection/credit-protection/overview.go, last viewed 11/12/10.

[3]*See* https://www7.bankofamerica.com/insurance/tools/faqs.go#Payment Protection, last viewed 11/12/10.

Amended Complaint - Page 9

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

excluded from receiving benefits for loss of employment.  To qualify for benefits, one needs to work at least 1,000 hours per year.  However, upon information and belief, Defendants make no effort to investigate whether any of the Washington consumers that pay for Payment Protection are part-time or seasonal.

32.     Defendants sell Payment Protection to, or imposes Payment Protection on, consumers through different channels, including direct mail marketing, through phone calls, where the consumer may be asked to sign up when he or she activates the credit card, or through unilaterally imposing the Payment Protection feature on a consumer's credit card.

33.     If Payment Protection is imposed without a consumer's consent, the only way subscribers could ever know they have been enrolled in Payment Protection and are being charged for this product is from noticing a line-item fee listed on their monthly credit card statements.

34.     Payment Protection is so confusing as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by Defendants, that the product is essentially worthless.

35.     The cost of Payment Protection is a monthly charge of approximately $0.95 per $100 of a subscriber's month-ending credit card balance.

36.     For example, if a Defendants credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, the customer could owe Defendants approximately $95.00 that month just for Payment Protection coverage.

37.     When claims for Payment Protection benefits are denied, Defendants have not implemented a process through which subscribers' Payment Protection premiums are refunded, even if the subscribers are deemed to have been ineligible from the beginning for Payment

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

Protection benefits.  In fact, if subscribers are denied Payment Protection benefits, Defendants do not affirmatively remove subscribers from Payment Protection enrollment going forward.

38.     Defendants make it difficult for customers to get detailed information about claim benefits or restrictions, to file claims, or to cancel Payment Protection and obtain a refund if they do not want the program.

39.     Although heralded as coverage designed to protect a subscriber's credit card account "precisely during the times you need it most" and give subscribers "peace of mind protection for the unexpected," the Payment Protection device is virtually worthless because of the numerous restrictions that are imposed, the exclusions of benefits, the hurdles that are placed in the way of Washington subscribers who attempt to secure payments from Defendants under Payment Protection coverage, and based on a comparison of the fees charged for Payment Protection against their benefits even in the best case scenario, given interest accrues during periods of coverage.

40.     Defendants employ their superior bargaining power to unilaterally impose upon customers at the time of the sale of their Payment Protection Plus plan their so-called terms and conditions, which include an arbitration clause with a waiver of purchasers , class action remedies.  The terms and conditions, which are not contained in the Payment Protection Plus Addendum that purportedly amends customers' Bank of America Credit Card Agreement (except for a general reference to arbitration) but rather in the general Credit Card Agreement, constitute contracts of adhesion. In practice, the terms and conditions would operate to exempt Defendants from their responsibility for their own fraud and willful injury to their customers. Bank of America's Credit Card Agreement, with their arbitration and class action waiver clause, is unconscionable and contrary to public policy and therefore is unenforceable against

Amended Complaint - Page 11

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1   their customers.

2       41.     Defendants' Payment Protection policies and practices are both substantively

3   and procedurally unconscionable in the following material respects, among others:

4           a.      Defendants do not provide the terms and conditions of Payment

5   Protection to subscribers until after they have enrolled in the plan;

6           b.      Defendants make no effort and undertakes no investigation to determine

7   if a cardholder would qualify for Payment Protection coverage;

8           c.      Defendants unilaterally impose Payment Protection upon some of their

9   customers' credit card accounts, thereby failing to disclose to customers that Payment

10  Protection is an optional plan and that they are required to "opt out" of Payment

11  Protection;

12          d.      Defendants do not obtain affirmative consent from some subscribers

13  prior to enrolling them in Payment Protection;

14          e.      The written documents that Defendants do eventually provide to

15  subscribers, referred to by Defendants as a welcome package or welcome kit, do not

16  provide subscribers with sufficient information to understand the terms and conditions

17  of Payment Protection;

18          f.      The welcome package and related documents are contracts of adhesion

19  in that they are standardized forms, imposed and drafted by Defendants, which are

20  parties of vastly superior bargaining strength, and only relegate to the subscriber the

21  opportunity to adhere to them or reject the agreement in their entirety;

22          g.      The welcome package and related documents provided to customers are

23  ineffective, ambiguous, deceptive, unfair, and misleading, in that they do not require

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

affirmative customer consent (like a signature) and do not unambiguously state that certain customers might be ineligible to receive some or all of the Payment Protection benefits, even though Defendants had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

      h.     Defendants do not alert customers that certain individuals are ineligible for certain Payment Protection benefits.

      i.     The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers, nor is the value of Payment Protection computable or discernible by subscribers;

      j.     Defendants charge exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers;

      k.     The formula Defendants use to compute Payment Protection fees is misleading such that subscribers are unable to budget for this product or understand their overall cost in order to determine its value to subscribers; and

      1.     Defendants make it difficult for subscribers to obtain information about the terms and conditions of Payment Protection coverage, file claims, or cancel enrollment or obtain a refund if they did not want to enroll, in order for Defendants to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

      42.     Considering the great business acumen and experience of Defendants in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1    purpose and effect of the terms, the allocation of the risks between the parties, and similar

2    public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a

3    matter of law.

4          43.    Plaintiffs and members of the Class have sustained damages as a result of

5    Defendants' unconscionable policies and practices as alleged herein.

6            **FACTUAL ALLEGATIONS AS TO PLAINTIFF CHERYL ROSS**

7          44.    Cheryl Ross is a Washington resident.

8          45.    In approximately 1995, Ms. Ross became a Bank of America credit card holder.

9    In approximately 2006, Ms. Ross became enrolled in Defendants' Payment Protection plan

10   believed to be named "Cardholder Security Plan," and "Credit Protection Plus."

11         46.    From the time she enrolled in Payment Protection, up to and through the date

12   when Payment Protection was canceled, Ms. Ross never held a full time job and experienced

13   periods of complete unemployment.  Defendants never inquired into Ms. Ross's employment

14   status prior to enrolling her in Payment Protection or any time thereafter.  It is believed that her

15   Payment Protection plan covered certain protected events such as involuntary unemployment,

16   life events such as marriage, birth or adoption of a child, or achieving academic excellence or

17   graduation, disability from employment, and family leave of absence from employment, for

18   which Ms. Ross was ineligible and would never benefit.

19         47.    During the time Ms. Ross was signed up for Defendant's Payment Protection

20   plan, she was often billed between $70.00 and $90.00 a month or more, depending on the

21   balance carried on the account.

22         48.    Defendants misrepresented, concealed, omitted, or failed to disclose existing,

23   material facts to Ms. Ross, such as the fact that certain benefits were subject to so many

Amended Complaint - Page 14

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1   exclusions that it was unlikely that Ms. Ross could or would ever receive those benefits, and

2   represented to Ms. Ross existing, material facts, such as the fact that Payment Protection

3   provided Ms. Ross with certain benefits that were not, in fact, available to Ms. Ross, when

4   those facts were material to Ms. Ross' decision to purchase Payment Protection, and when: (1)

5   those facts were false; (2) Defendants knew the facts were false or was ignorant of their truth;

6   (3) Defendants intended Ms. Ross to act on the facts; (4) Ms. Ross did not know the facts were

7   false; (5) Ms. Ross relied on the truth of the facts; (6) Ms. Ross had the right to rely on the truth

8   of the facts; and, (7) Ms. Ross suffered damages.

9         49.    Had Ms. Ross known the true facts about Payment Protection, she would not

10   have purchased Payment Protection from Defendants.

11         50.    Ms. Ross attempted to cancel Payment Protection, but was prevented from

12   doing so by Defendants.

13         51.    In June 2010, Ms. Ross started a Special Repayment Program with Defendants

14   to pay off her credit card balance.  This program lasts for sixty billing cycles.  As a result of

15   admission into this program, Ms. Ross's Payment Protection Plan was cancelled, however,

16   the debt that she is paying through the Special Repayment Program includes the charges for

17   Payment Protection, as well as the interest charged on those fees.

**FACTUAL ALLEGATIONS AS TO
PLAINTIFFS WILFRED SOMERS AND VIVIAN SOMERS**

18

19         52.    Wilfred Somers is a Washington resident over the age of 65.  Mr. Somers

20   retired in 1980 due to a physical disability.  Wilfred Somers is married to Vivian Somers.

21         53.    Vivian Somers is a Washington resident over the age of 65.  Mrs. Somers

22   retired in 1990.  Vivian Somers is married to Wilfred Somers.

23         54.    Approximately nine years ago, Mr. and Mrs. Somers became Bank of America

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

credit card holders.  They are co-signers or joint owners of one credit card with Bank of America.  Mr. and Mrs. Somers became enrolled in Defendants' Payment Protection plan several years ago.

55.    From the time they enrolled in Payment Protection, up to and through the date on which this Complaint was filed, both Mr. and Mrs. Somers were retired, and Mr. Somers was disabled.  Defendants never inquired into either Mr. Somers' or Mrs. Somers' employment status prior to enrolling them in Payment Protection or any time thereafter.   It is believed that their Payment Protection plan covered certain protected events such as involuntary unemployment, life events such as marriage, birth or adoption of a child, or achieving academic excellence or graduation, disability from employment, and family leave of absence from employment, for which Mr. and Mrs. Somers were ineligible and would never benefit.

56.    During the time Mr. and Mrs. Somers were signed up for Defendant's Payment Protection plan, they were often billed between $10.00 and $15.00 a month or more, depending on the balance carried on the account.

57.     Defendants misrepresented, concealed, omitted, or failed to disclose existing, material facts to Mr. and Mrs. Somers, such as the fact that certain benefits were subject to so many exclusions that it was unlikely that Mr. and Mrs. Somers could or would ever receive those benefits, and represented to Mr. and Mrs. Somers existing, material facts, such as a the fact that Payment Protection provided Mr. and Mrs. Somers with certain benefits that were not, in fact, available to Mr. and Mrs. Somers, when those facts were material to Mr. and Mrs. Somers' decision to purchase Payment Protection, and when: (1) those facts were false; (2) Defendants knew the facts were false or was ignorant of their truth; (3) Defendants intended Mr. and Mrs. Somers to act on the facts; (4) Mr. and Mrs. Somers did not know the facts were

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1   false; (5) Mr. and Mrs. Somers relied on the truth of the facts; (6) Mr. and Mrs. Somers had the

2   right to rely on the truth of the facts; and, (7) Mr. and Mrs. Somers suffered damages.

3   58.   Had Mr. and Mrs. Somers known the true facts about Payment Protection, they

4   would not have purchased Payment Protection from Defendants.

5   59.   Mr. and Mrs. Somers are still enrolled in Payment Protection.  Their credit

6   card account is still charged for Payment Protection every month even though they are

7   ineligible to collect Payment Protection benefits.

8   **CLASS ACTION ALLEGATIONS**

9   60.   Plaintiffs bring this action on their own behalf and on behalf of a class of all

10   other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of

11   Civil Procedure.

12   61.   Plaintiffs bring this action as class representatives to recover damages and/or

13   refunds from Defendants for consumer fraud as expressly defined in Washington's Consumer

14   Protection Act, RCW 19.86.090, injunctive relief and declaratory judgment, and unjust

15   enrichment.

16   62.   This action satisfies the numerosity, commonality, typicality, adequacy,

17   predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule

18   23(a) and (b).

19   63.   Plaintiffs seek certification of a class comprised of the following Washington

20   citizens and consumers:

21       All residents of the state of Washington who (1) were solicited by Defendants to
         purchase Payment Protection; and (2) paid for Payment Protection ("Payment
22       Protection Subscribers") at all times the product was sold.

23   64.   Plaintiffs seek certification of the following subset class comprised of the

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

following Washington citizens and consumers:

> All residents of the state of Washington who were not eligible for full benefits, or whose eligibility for benefits were limited by express exclusions, including but not limited to those Payment Protection subscribers who were retired, self-employed or part time or seasonal workers, or were disabled, either at the time that they were solicited for and made payments to Defendants for Payment Protection, or any time thereafter while continuing to pay for Payment Protection.

65.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

66.     Excluded from the Class are:

a.     Defendant and any entities in which Defendant has a controlling interest;

b.     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendant;

c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.     Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

e.     All persons or entities that properly execute and timely file a request for exclusion from the Class;

f.     Any attorneys representing the Plaintiff or the Class; and

g.     All governmental entities.

67.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>.  The Class is comprised of over 100 people and possibly hundreds of thousands of individuals who were Defendants customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable.  In addition to rolls maintained by the Defendants and their agents, the Class members may be located and informed of the pendency of this action by a combination of

Amended Complaint - Page 18

electronic bulletins, e-mail, direct mail and public notice, or other means.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

68.   <u>Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)   Whether Defendants' sales, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of Washington law;

b)   Whether Defendants' common and uniform sales, billing, and marketing schemes related to Payment Protection insurance as alleged in this Complaint constitutes a deceptive trade practice as under Washington law;

c)   Whether Plaintiffs and the Class members are entitled to restitution of all amounts acquired by Defendants through their common and uniform scheme;

d)   Whether Plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Defendants;

e)   Whether Plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

f)   Whether Plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of Defendants' wrongful scheme.

69.   <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiffs assert claims that are typical of the entire Class, having all been targeted by Defendants as consumers who were improperly

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1    assessed charges for Payment Protection, and having paid for this product.  Plaintiffs and the

2    Class members have similarly suffered harm arising from Defendants' violations of the law

3    as alleged in this Complaint.

4           70.    Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiffs are adequate

5    representatives of the Class because they fits within the class definition and their interests do

6    not conflict with the interests of the Members of the Class they seek to represent.  Plaintiffs

7    are passionate about this litigation personally and will prosecute this action vigorously for the

8    benefit of the entire Class.  Plaintiffs are represented by experienced and able attorneys from

9    coordinated law firms that will collectively and jointly serve as class counsel.  Class counsel

10   have litigated numerous class actions, and Plaintiffs' counsel intend to prosecute this action

11   vigorously for the benefit of the entire Class.  Plaintiffs and class counsel can fairly and

12   adequately protect the interests of all of the Members of the Class.

13          71.    Superiority – Fed. R. Civ. P. 23(b)(3).  The class action is the best available

14   method for the efficient adjudication of this litigation because individual litigation of Class

15   Members' claims would be impracticable and individual litigation would be unduly

16   burdensome to the courts.  Plaintiffs and members of the Class have suffered irreparable harm

17   as a result of Bank of America's fraudulent, deceitful, unlawful, and unfair conduct.  Because

18   of the size of the individual Class members' claims, no Class members could afford to seek

19   legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the

20   Class would have no reasonable remedy and would continue to suffer losses, as and/or FIA

21   continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of

22   this Complaint, and Defendants would be permitted to retain the proceeds of their violations

23   of law.  Further, individual litigation has the potential to result in inconsistent or

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT ONE - BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING[4]

72.     Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as though set out here word for word.

73.     Upon information and belief, Plaintiffs and Defendants contracted for Payment Protection benefits.

74.     Upon information and belief, the terms and conditions of this agreement are embodied in written materials in the possession of Defendants.

75.      In Washington, a covenant of good faith and fair dealing is implied in every contract.  Washington has adopted the concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.

76.     Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, parties to a contract are mutually obligated to comply with the substance of their contract in addition to their form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

---

[4] Washington treats the breach of the covenant of good faith and fair dealing as a species of a breach of contract claim.  Accordingly, Plaintiffs plead these claims together, in a single count.

Amended Complaint - Page 21

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

77.     Subterfuge, evasion, concealment, and omission violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

78.     Defendants have breached the covenant of good faith and fair dealing inherent in the Payment Protection agreement.

79.     Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

80.      Plaintiffs and members of the Class have sustained damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

## <u>COUNT TWO – UNCONSCIONABILITY</u>

81.     Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as though set out here word for word.

82.     Defendants' Payment Protection policies and practices are substantively and procedurally unconscionable in the following material respects, among others:

> a.      Upon information and belief, Defendants unilaterally imposes Payment Protection upon their customers' credit card accounts, thereby failing to disclose to customers that Payment Protection is an optional plan and that they have the option to "opt out" of Payment Protection;
>
> b.      Upon information and belief, Defendants did not obtain affirmative consent from subscribers prior to enrolling them in Payment Protection;
>
> c.      Defendants do not provide the terms and conditions of Payment Protection to subscribers until <u>after</u> they have enrolled in the plan;
>
> d.      The written documents that Defendants do eventually provide to

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

subscribers, do not provide subscribers with sufficient information to understand the terms and conditions of Payment Protection;

e.  The "congratulations" letter and brochure, along with other written materials in the possession of Defendants, are contracts of adhesion in that they are standardized forms, imposed and drafted by Defendants, which is a party of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;

f.  These documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though Defendants had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

g.  Defendants do not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited to retired, unemployed, self-employed, persons employed on a part-time or seasonal basis and those that are disabled.

h.  The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers, nor is the value of Payment Protection computable or discernable by subscribers;

i.  Defendants charge exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because Bank of America does not identify Payment Protection as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

j.  The formula Defendants use to compute Payment Protection fees is misleading such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers; and

k.  Defendants operate their customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for Bank of America to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

83.  Considering the great business acumen and experience of Defendants in

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1   relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining

2   power, the inconspicuousness and incomprehensibility of the contract language at issue, the

3   oppressiveness of the terms, the commercial unreasonableness of the contract terms, the

4   purpose and effect of the terms, the allocation of the risks between the parties, and similar

5   public policy concerns, these provisions are unconscionable and, therefore, unenforceable as

6   a matter of law.

7       84.     The imposition of Payment Protection fees which excessively exceed the

8   amount of claims-paid by a rate higher than any insurance product would be permitted to

9   charge for premiums is itself unconscionable. Such fees are not reasonably related to

10  Defendants' cost of administering the plan and providing the benefits offered.

11      85.     Plaintiffs and members of the Class have sustained damages as a result of

12  Defendants' unconscionable policies and practices as alleged herein.

### COUNT THREE – VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86.090)

15      86.     Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as

16  though set out here word for word.

17      87.     Defendants' Payment Protection plan constitutes "an unfair or deceptive act or

18  practice" for purposes of Washington's Consumer Protection Act.  *See* RCW 19.86.090.

19      88.     Defendants' unfair or deceptive acts occur in trade or commerce.  *See* RCW

20  19.86.090.

21      89.     Defendants' conduct is so harmful and wide ranging that it has a public

22  interest impact.  *See* RCW 19.86.090.

23      90.     Plaintiffs have suffered an injury to their business or property.  *See* RCW

Amended Complaint - Page 24

1    19.86.090.

2         91.    Plaintiffs' injuries were caused by Defendants' conduct.  *See* RCW 19.86.090.

3         92.    Through their conduct, as described in preceding paragraphs of this

4    Complaint, Defendants has committed unconscionable commercial practices, deception,

5    fraud, false pretenses, false promises, misrepresentations, and the knowing concealment,

6    suppression, and omission of material facts with intent that others rely upon such

7    concealment, suppression, and omission, all in connection with the sale of Payment

8    Protection coverage.  This conduct is expressly declared unlawful by the Consumer

9    Protection Act.

10        93.    As a result of Defendants' activities which offend the Consumer Protection

11   Act, Plaintiffs have suffered an ascertainable loss of money and property.  Specifically,

12   Plaintiffs have become responsible for the payments attributable to Payment Protection

13   coverage, even though that service is virtually worthless to Plaintiffs.

14        94.    Plaintiffs seek judicial orders of an equitable nature against Defendants,

15   including, but not limited to, orders declaring Defendants' practices to be unlawful, unfair,

16   unconscionable and/or deceptive, and enjoining Defendants from undertaking any further

17   unlawful, unfair, unconscionable, and/or deceptive acts or omissions.

18        95.    Plaintiffs and the Class seek disgorgement and restitution plus interest on

19   damages at the legal rate, as well as three times the amount of their damages caused by

20   Defendants' violations of the Consumer Protection Act.

21        96.    Because Plaintiffs seek to enforce an important right affecting the public

22   interest, Plaintiffs request an award of attorneys' fees and costs on behalf of themselves and

23   the Class.

Amended Complaint - Page 25

97.     Due to Defendants' violations of the Consumer Protection Act prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the Class have suffered monetary damages for which Defendants are liable.

## COUNT FOUR - FRAUD

98.     Plaintiffs restate and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

99.     Defendants misrepresented, concealed, omitted, or failed to disclose existing, material facts to Ms. Ross and to Mr. and Mrs. Somers, such as the fact that certain benefits were subject to so many exclusions that it was unlikely that Plaintiffs could or would ever receive those benefits.

100.   Defendants represented to Plaintiffs existing, material facts, such as the fact that Payment Protection provided Plaintiffs with certain benefits that were not, in fact, available to Ms. Ross, when those facts were material to Plaintiffs' decision to purchase Payment Protection, and when: (1) those facts were false; (2) Defendants knew the facts were false or was ignorant of their truth; (3) Defendants intended Plaintiffs to act on the facts; (4) Plaintiffs did not know the facts were false; (5) Plaintiffs relied on the truth of the facts; (6) Plaintiffs had the right to rely on the truth of the facts; and, (7) Plaintiffs suffered damages.

## COUNT FIVE – INJUNCTIVE RELIEF
## PAYMENT PROTECTION RESTITUTION

101.   Plaintiffs restate and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

102.   Plaintiffs ask the Court to grant the remedy of restitution to them and to all members of the Class who made payments to Defendants for Payment Protection.  The Plaintiffs ask the Court to grant the following relief:

Amended Complaint - Page 26

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

a)    a refund of all Payment Protection payments made to Defendants;

b)    a refund to any consumers who were retired at the time they were sold Payment Protection by Defendants or at any time they paid for Payment Protection;

c)    a refund to any consumers who were ineligible for benefits, or who faced additional restrictions to receive benefits as a result of their health or employment status, at the time they were sold Payment Protection by Defendants or at any time they paid for Payment Protection;

d)    a refund to consumers who were otherwise not eligible for Payment Protection benefits at any time they paid for Payment Protection; and/or

e)    a refund of all amounts Defendants assessed for Payment Protection that were in excess of sums which would have been permissible had Defendants correctly identified the service as insurance.

103.    Plaintiffs seek injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described in this Complaint.

## COUNT FIVE – DECLARATORY RELIEF

104.    Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as though set out here word for word.

105.    Plaintiffs seek a Declaratory Judgment finding that the conduct of Defendants is in violation of the Washington Consumer Protection Act, and enjoining them from continuing in such conduct.

## COUNT SIX – UNJUST ENRICHMENT

106.    Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as though set out here word for word.

107.    In seeking to sell credit cards to Plaintiffs and members of the putative Class, Defendants withheld material terms from consumers prior to activation of Payment Protection

NELSON BOYD, PLLC
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

charges, including the express benefits, limitations, restrictions, and exclusions associated with the product.

108.    Defendants were unjustly enriched by charging Plaintiffs and the Class sums for Payment Protection coverage that were in excess of amounts which would have been permissible had Defendants properly identified the service as insurance.

109.    Defendants were unjustly enriched by the practice of signing people up for Payment Protection that never agreed to be plan members.

110.    Defendants were unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to consumers' credit cards.

111.    Defendants were unjustly enriched by the business practice of making it so impermissibly difficult for consumers to actually receive coverage under Payment Protection that the service was virtually worthless.  Such unconscionable acts include, but are not limited to:

      a)    Denying claims over the phone without written explanation;

      b)    Denying claims without sufficient investigation;

      c)    Requiring claimants to submit excessive and duplicate documentation, and/or;

      d)    Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, order for the subscriber to successfully file a claim.

112.    Defendants were unjustly enriched by charging Plaintiffs and the Class members for illusory benefits.

113.    Defendants were unjustly enriched by charging Plaintiffs and the Class members who were retired or were otherwise not eligible to receive payments by the terms of

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601

1   the Payment Protection plan.

2       114.    As a result of Defendants' actions which constitute unjust enrichment,

3   Plaintiffs and Class members suffered actual damages for which Defendants are liable.

4   Defendants' liability for those damages should be measured by the extent of their unjust

5   enrichment.

6                               **PRAYER FOR RELIEF**

7       **WHEREFORE,** Plaintiffs pray:

8           A.      That the Court determines that this action may be maintained as a class

9   action under Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiffs are proper class

10  representatives and the best practicable notice of this action is to be provided to members of the

11  Class represented by the Plaintiffs;

12          B.      That judgment be entered against Defendants and in favor of Plaintiffs

13  and the Class on the Causes of Action in this Complaint, for injunctive relief as requested

14  above, and for actual, compensatory, punitive, and treble damages in an amount to be

15  determined at trial;

16          C.      That judgment be entered imposing interest on damages, litigation costs,

17  and attorneys' fees against Defendants;

18          D.      For all other and further relief as this Court may deem necessary and

19  appropriate.

20                                  **JURY DEMAND**

21      Plaintiffs demand a trial by jury consisting of twelve persons on all issues so triable.

22                              **NELSON BOYD, PLLC**

23

                            BY:      _/s/ Deborah M. Nelson_____

Amended Complaint - Page 29

                                        **NELSON BOYD, PLLC**
                                    1700 Seventh Avenue, Suite 2220
                                        Seattle, WA  98101
                                        (206) 971-7601

Deborah M. Nelson, WSBA #23087
Jeffrey D. Boyd, WSBA #41260
1700 Seventh Ave, Suite 2220
Seattle, WA  98101
Telephone:  (206) 971-7601
nelson@nelsonboydlaw.com
boyd@nelsonboydlaw.com

**NELSON BOYD, PLLC**
1700 Seventh Avenue, Suite 2220
Seattle, WA  98101
(206) 971-7601